589 So.2d 123 (1991)
Erma J. POLK
v.
LaPlause POLK.
No. 90-CA-0684.
Supreme Court of Mississippi.
November 6, 1991.
*124 Leman D. Gandy, Greenwood, for appellant.
Sally Barrett, Barrett Law Offices, Lexington, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
Erma Polk appeals from a judgment of the Holmes County Chancery Court, which involved both disbursement of funds from the partition sale of the home she and LaPlause Polk had once owned, and consideration of Erma's petition to modify the original decree of divorce from LaPlause. After two separate hearings the chancery court divided some of the personal property at issue, and made certain deductions from both parties' sale proceeds, but otherwise left custody and child support as it had been after the original divorce judgment. We affirm as to the disbursement of funds, but reverse and remand on the matter of custody and child support.

I.
On April 13, 1987, Erma J. Polk filed a complaint for divorce against her husband, LaPlause Polk, on the ground of desertion. LaPlause answered and counterclaimed against Erma for divorce on the ground of habitual cruel and inhuman treatment. On January 5, 1988, the Holmes County Chancery Court granted a divorce to LaPlause Polk. Marcus and Darien Polk remained in the custody of their father, LaPlause. Kawanis Polk, the daughter of the parties, remained in the custody of her mother.[1] Neither party was required to pay child support to the other party. Erma and LaPlause each owned an undivided one-half interest in the family home, located in the Thurmond Subdivision in Holmes County. The court found that the property was not susceptible of division, and granted LaPlause's request for partition. The trial court's judgment was subsequently affirmed by this Court. Polk v. Polk, 559 So.2d 1048 (Miss. 1990). The lower court named Joe Moore, chancery clerk, special commissioner and directed him to sell the property to the highest bidder on February 5, 1988.
The sale did not take place until May 27, 1988. LaPlause Polk bid $30,000.00 and the property was sold to him. Because of Erma's pending appeal to this Court, the chancery court held the $30,000.00 in the court registry until the appeal could be resolved.
Polk v. Polk was decided on April 11, 1990. On May 1, 1990, LaPlause Polk filed *125 a Motion for Disbursement of Funds and Other Relief. LaPlause asked the chancery court to finally disburse the funds from the sale of the home. He alleged that Erma had continued to live in the house in question since June 8, 1988. He asked that the court evict her from the house, and deduct from her share of the sale monies in an amount equal to a reasonable amount of rent for the months she had lived in the family home since LaPlause had bought it at auction. This motion was noticed for hearing on May 22, 1990.
On May 9, 1990, Erma Polk filed a Cross-Motion for Disbursement of Funds and Other Relief. She alleged that Marcus Polk had been living with her since June 20, 1989, despite the court granting custody of Marcus to his father, LaPlause. She asked that LaPlause be ordered to pay child support for the months that Marcus had lived with her. Erma further alleged that at the time LaPlause left the family home $4,267.45 was due on the mortgage. Erma alleged that she paid off this balance, and she asked that LaPlause be ordered to reimburse her. She further alleged that she had paid the property taxes on the family home from 1985 to 1989, in the amount of $693.93, and asked that LaPlause be ordered to reimburse her for this amount. She alleged that she had paid delinquent utility bills in the amount of $465.00 after LaPlause had left and that he should be ordered to reimburse her for that amount. She finally asked that, because she had legal custody of Kawanis and physical custody of Marcus, she be awarded sole use and possession of the family home and all the household furniture and appliances. Apparently, no notice was given as to when the cross-motion would be called up.
On May 22, the parties appeared for the hearing. After some discussion, the following exchange took place:
BY THE COURT: The court in conference with counsel a few moments ago was advised that Mr. Barrett was willing to accommodate Mr. Gandy in the hearing of the cross motion by hearing the same on this day provided it did not delay the hearing of the motion filed by Mr. LaPlause Polk. The court advised the parties that it had another case set for one o'clock which would take precedent over this case, but that the court in an attempt to accommodate the parties would be willing to hear the motion of LaPlause Polk first and then move into the cross motion with the view to completing it before one o'clock or at least trying it until one o'clock. This offer by the court carried with it the implication that the court would stop a few minutes for the lunch hour. Without reciting the long history of this case, which includes a Supreme Court appeal and several contempt proceedings regarding the subject matter of that appeal, the court feels that the said LaPlause Polk is certainly entitled to proceed today on his motion and that it should be disposed of or at least addressed by the testimony before the cross motion is heard or testimony begins. That will be the order of procedure fixed by the court. If there is any response that either one wants to make in regard to the truth or the accuracy of what I have just stated, I will be glad to let you preserve your position in the record. Mr. Barrett?
BY MR. BARRETT: We have no response.
BY THE COURT: Mr. Gandy?
BY MR. GANDY: Your Honor, it is my understanding that in the event time does not permit, would it be continued for us to come back and present our cross motion at a later date?
BY THE COURT: Oh, yes, sir. I would let you come back as soon as I could find a convenient time and complete your motion. Yes, sir.
BY MR. GANDY: Would the court, in order to preserve time, if we have additional pleadings and can get ample process for it, hear other matters regarding this at the same time?
BY THE COURT: I would certainly try to accommodate you if there are other issues involved. I would try to hear it all on that subsequent day  sure.
BY MR. GANDY: Thank you, sir.
*126 LaPlause Polk testified that Erma Polk had been living in the house in the Thurmond Subdivision since June 1988, and was still living there despite various requests and court orders. Erma Polk had paid no rent since June of 1988, when LaPlause had gotten the deed to the house. LaPlause was currently living in the house his deceased parents had owned. He claimed to be paying rent, or providing in-kind maintenance services on the house. LaPlause admitted that his son, Marcus, was living with Erma.
Renee Taylor had been a realtor for about four and a half years in Tchula and in Lexington. In her opinion, a reasonable monthly rental was in the $200.00-$250.00 range.
Erma Polk testified that she was still living in the house in the Thurmond Subdivision and intended to stay there until she received her share of funds from the partition. She agreed that she had seen certain papers, containing derogatory statements about LaPlause, which were signed and allegedly written by their daughter, Kawanis, but Erma had nothing to do with the preparation of the papers.
Both sides rested, as the trial court reiterated that the proceeding concerned only the motion that had been called up for that day, LaPlause Polk's motion. Counsel for Erma Polk announced his intention to file additional pleadings and consolidate those with the cross-motion for disbursement already filed. Later that day the court issued two orders, one setting Erma Polk's cross-motion for a hearing on June 11, and the other taking LaPlause Polk's original motion under advisement.
On May 30, 1990, Erma Polk filed a Petition for Modification of Prior Judgment. She alleged that she had legal custody of Kawanis Polk, as well as actual physical custody of both Kawanis and Marcus Polk, and that a material change in circumstances had occurred, such that she should have legal custody of both children. She asked that LaPlause be ordered to pay child support for both children. She also asked for use and possession of the house in Thurmond Subdivision, as well as the household furniture and supplies. She also asked that LaPlause obtain medical insurance for the children, and that she be allowed to claim the two children as dependents for tax purposes. Erma also moved to consolidate her cross-motion and the petition for modification for the purpose of hearing both at one time.
On June 1, 1990, the lower court rendered judgment on LaPlause Polk's motion for disbursement of funds. The court found that the funds should be disbursed to LaPlause and Erma, with $4600.00 being deducted from Erma's share, that being made up of a reasonable monthly rent, $200.00, times the number of months, twenty-three, that Erma remained in the house past the time LaPlause had bought it at auction. The court further found that Erma Polk's behavior in refusing to leave the house would have justified punitive damages. Because of this, the court awarded $430.00 in attorney's fees. Lastly, the court ordered that Erma and her possessions be removed from the house.
Court reconvened on June 11 to hear Erma Polk's cross-motion and her petition for modification. LaPlause Polk was called as an adverse witness. LaPlause worked as a school teacher in Holmes County. He testified to a gross monthly salary of $1982.58 and a net monthly salary of $1359.78. LaPlause said that he had taken Marcus to Erma's house for Marcus' birthday on June 20, 1989, and then Marcus had failed to come home. LaPlause denied that he had been told that Marcus didn't want to come home, saying that he had been told only to contact his attorney about the situation. LaPlause had not given Erma any money to help support Marcus. LaPlause remembered giving $60.00 to his daughter Kawanis over the years. He testified concerning a two-paged typed document, titled "Headline: Father's Eviction Leaves Children Homeless," signed by Kawanis and Marcus Polk. LaPlause also testified concerning a $10.00 check he had sent to Kawanis, and the fact that she had returned the check along with a strongly worded letter, dated January 30, 1987. LaPlause stated that he wanted Marcus returned to *127 him. He also stated that he still loved Kawanis in spite of everything. He accused Erma of turning the children against him, but he admitted that he had never actually heard Erma say anything to the children about him.
Marcus Polk was almost thirteen years old. He testified that he had lived with his mother since June of 1989, of his own free will. He denied that his mother had ever threatened or coerced him into living with her. He testified that during the 4-5 years he had lived solely with his father, he had seen his father drinking alcohol almost every day after work. As a result, LaPlause would stagger and fall on the floor. Marcus also said that his father would verbally abuse him. He stated that his father had not asked him to spend any time with him since he had started living with his mother. Marcus stated that he would prefer to continue living with his mother. He denied that his mother had tried to turn him against his father. He also denied that his father had ever had to force him to go to his mother's house. He stated that he tried to call his father "real often" on the telephone and never could seem to get him. As to the document entitled "Headline: Father's Eviction Leaves Children Homeless," Marcus testified that he and Kawanis had written it "right after [LaPlause] said we would be leaving our home." Marcus said that he and Kawanis had also written the letter entitled "Dearest Relatives." He denied that his mother knew anything about the documents or that she had helped in their preparation. He said that he had helped write the letters because he was hurt about being put out of his house.
Kawanis Polk was eighteen years old and a recent high school graduate. She had graduated eighth out of a class of 85, was on the waiting list for summer school at Tougaloo, and had been accepted for the fall semester at Rust College. She planned to be a pharmacist. She and her mother had applied for grants and loans but nothing had been approved as of the time of hearing. Kawanis admitted writing the document entitled "Dearest Relatives," but said that she did it out of frustration and confusion. She claimed to still love her father. She testified that her father had provided no support for her since he and her mother had divorced. She denied that her mother had ever tried to turn her against her father and added that her mother had encouraged her to visit her father. Kawanis testified that her father had never called her since her parents had divorced. She denied that her mother had anything to do with the preparation of the derogatory documents she had mailed or circulated. Kawanis stated that her father drank regularly and that this would lead to personality changes. As Kawanis put it, LaPlause behaved "more with a direct tone than he would if he was not drinking." She denied that her brother Marcus had helped her write the document entitled "Dearest Relatives," although she did discuss the letter with Marcus before she wrote it. She had mailed the letter entitled "Dearest Relatives" to all of LaPlause's brothers and sisters, because she wanted them to know what LaPlause had put his children through. Kawanis took the document entitled "Headline: Father's Eviction Leaves Children Homeless" to the Holmes County Herald, but the newspaper had refused to publish it.
Erma Polk testified that she was in the process of moving out of the house in Thurmond Subdivision. She stated that Marcus had come back to visit her on June 20, 1989, as it was around the time of his birthday and Erma was planning a party for him. At the end of the weekend, Marcus told her that he didn't want to go home. Erma stated that she called the sheriff and he talked to Marcus, although she did not hear what was said. When Marcus first came to stay with her, he was withdrawn; he was overeating; he was easily upset and would cry often; he refused to go outside, fearing that the police would arrest him or take him back to his father. Erma stated that LaPlause had refused to support Marcus in any way or to send Marcus' clothes, saying that he didn't know if Marcus would stay with her or not. She denied that she had done anything to turn the children against their father, saying that LaPlause *128 would not even acknowledge the children when he met them on the street. Erma testified to a gross monthly income of $951.42, and monthly expenses of $1021.28, although there appeared to be some confusion about the gross income figure. She denied that she had anything to do with the documents Kawanis had written.
The court issued its final opinion on June 21, 1990. It found that there had been no substantial and material change in circumstances necessitating a change of custody for Marcus. Marcus' custody, and the costs of his care, remained with his father. The court further found that Kawanis had shown such undeserved contempt for her father that he should not have to help pay for her college education. The court also found insufficient evidence to order support even without the factor of Kawanis' attitude toward her father. Because there was no change in custody, the lower court made no ruling as to use and possession of the family home's furnishings. The court did make findings as to the ownership of certain furnishings. It also found that Erma Polk's evidence was insufficient to show that she had paid off the mortgage to any extent.

II.
LaPlause Polk filed his motion for disbursement of funds. Erma Polk filed a cross-motion for the same relief. LaPlause's motion asked for the following relief: (1) disbursement of funds; (2) deduction of a reasonable rent from Erma's portion for holding over in the family home when she should have vacated; (3) that she (and presumably Kawanis) be evicted from the home; (4) and for sanctions. In her cross-motion, Erma asked for: (1) back child support for Marcus; (2) mortgage payments she had allegedly made; (3) property taxes she had allegedly paid; (4) utility bills she had allegedly paid; (5) sole use and possession of all furniture and appliances; (6) sole use of the family residence. After the hearing on LaPlause's motion, and before the hearing on Erma's motion, the lower court granted LaPlause's motion in its entirety.
Erma argues that the lower court should not have granted any relief in the motion or cross-motion to disburse funds without hearing all of the evidence on both motions, regardless of when the motions were noticed to be heard. Erma relies on Miss.R.Civ.P. 54(b), which provides certain procedural safeguards against piecemeal appeals. Even if Rule 54 is applicable, neither party attempted an appeal from less than the entire judgment. The only issue on which Erma could have been prejudiced by the procedure followed by the lower court is the issue of sole use and possession of the family house. The court ordered her evicted without first hearing her proof on her request for possession of the house. This relief was also related to her request for custody of both children, subsequently decided against her. On the other hand, the issue of the possession of the marital home was fully litigated in the initial divorce trial and appeal, and some of Erma's argument smacks of a rehash of old issues. Because of this, and because the evidence supports the judgment entered below, we find that this issue is without merit.

III.
Erma Polk further argues that the chancery court erred in denying her the relief she sought in her cross-motion for disbursement of funds. The court found that the furnishings of the home were owned by the respective parties and divided them on that basis. The parties stipulated as to the matter of back property taxes, and the lower court awarded this amount, $465.90, to Erma Polk. All other relief was denied. Erma only discusses one issue in her brief, that being the back mortgage payments.
When Erma Polk attempted to raise the issue of back mortgage payments at trial, LaPlause Polk objected on two grounds: (1) this issue could have been raised at the original divorce hearing, and as such, a hearing at any subsequent point was barred by res judicata; (2) insufficiency of the evidence. Erma was able to introduce some evidence on this matter. When Erma brought up delinquent utility *129 bills, LaPlause again objected on the ground of res judicata. The lower court sustained this objection and did not allow any evidence on this topic.
LaPlause Polk cites Bowe v. Bowe, 557 So.2d 793 (Miss. 1990), for the proposition that all claims which were raised in an original action, or could reasonably have been raised in an original action and were not, are finally adjudicated, and are barred from being subsequently raised. As to the mortgage payments, Erma Polk testified that her monthly house note was "$243.00 and some change," and that she spent a "little better than $4000.00." She testified about a closure statement marked paid and dated April 21, 1987, though the statement was never introduced. She also testified about cancelled checks which showed her mortgage payments, though she failed to introduce any of these checks. The court found that her proof was insufficient on this issue, and we agree. Finally, Erma Polk relies on Miss. Code Ann. § 11-21-39 (1972), which provides that a mortgage or lien executed by a joint tenant shall remain in force on the share of that joint tenant after partition. We fail to see how this statute helps Erma. As to her utility bills, Erma makes no mention of this in her briefs. We find no merit in this issue.

IV.
The law in child custody cases is well-settled. For the custody decree or order to be modified so as to transfer custody to the non-custodial parent, the non-custodial parent must prove that since the entry of the decree or order sought to be modified, a material change of circumstances has occurred within the custodial home which adversely affects the child's welfare. Tucker v. Tucker, 453 So.2d 1294 (Miss. 1984); Phillips v. Phillips, 555 So.2d 698 (Miss. 1989). In considering this alleged change, the court should view the evidence within the totality of the circumstances, and not base a finding on an isolated incident. Once the material change has been found, a change in custody is in order only if it would be in the best interest of the child involved. Spain v. Holland, 483 So.2d 318 (Miss. 1986). A chancellor's finding of fact on such a matter will not be set aside or disturbed on appeal unless the finding is manifestly wrong, or is not supported by substantial credible evidence.
Erma Polk alleges that a material and significant change in circumstances had occurred, in that Marcus was living with her and not with LaPlause. Erma relies on Miss. Code Ann. § 93-11-65 (Supp. 1990), which provides in part:
Provided, however, that if the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for the care and maintenance of the children, and that it would be to the best interest and welfare of the children, then any such child who shall have reached his twelfth birthday shall have the privilege of choosing the parent with whom he shall live.
As both parents retained custody of at least one child after the initial divorce decree, it would appear that the chancellor found them both to be fit parents. Erma apparently would be able to provide for Marcus if she were receiving child support. As for Marcus' best interest, the chancellor apparently found that nothing had substantially changed since the divorce, when Marcus' custody had initially been awarded to his father. He also found that Marcus was not credible as a witness, and as a judge sitting without a jury this was his decision to make. Marcus' insistence that he wrote or contributed to certain portions of "Dearest Relatives" and "Headline: Father's Eviction Leaves Children Homeless" was not very credible.
Marcus' objections to his father centered primarily around his alleged drinking. He stated that his father drank "mostly every day when he would come in from work." Marcus alleged that his father would stagger and fall on the floor and call him ugly names. At one point, Marcus stated that his father bought him everything he needed. Then Marcus stated that he didn't have enough pants. Kawanis stated that her father drank almost every day and that when he did, he had more of a direct tone *130 to his behavior. LaPlause was barely questioned on this matter.
Marcus appears not to have much of a relationship left with his father, and his testimony, however confusing, was clear on one matter  he wanted to remain with his mother. As Marcus had reached the age of twelve, he had the privilege, under § 93-11-65, to choose the parent with which he would live, as long as the chancellor found that the choice was in Marcus' best interest and the other requirements of the statute were met. In denying Marcus this privilege, the chancellor found only that the best interest of Marcus did not require that his custody be changed. We find that when the chancellor denies a child his choice of custodial parent under § 93-11-65, then the chancellor must make on-the-record findings as to why the best interest of the child is not served. This cause is reversed and remanded for further consideration on this matter. As to whether there has been a substantial and material change in circumstances, we find that the lower court should consider the fact that Marcus has chosen to live with his mother, as well as the fact that Marcus has passed twelve years of age and may qualify under § 93-11-65, as factors to be considered on remand along with any other evidence the parties may wish to produce.

V.
This Court recently stated, in Nichols v. Tedder, 547 So.2d 766, 769 (Miss. 1989):
In the context of child care and maintenance orders, regular child support refers to the sums of money which the particular parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter. Other sums which a parent may be ordered to pay for the care and maintenance of the child are the expenses of a college, or other advanced education. As noted in Duett v. Duett, 285 So.2d 140 (Miss. 1973), the statute authorizing the court to enter decrees providing for the care and maintenance of the children is "susceptible of an interpretation to allow" the court to order the payment of expenses for a college education. 285 So.2d at 142, quoting Pass v. Pass, 238 Miss. 449, 458-59, 118 So.2d 769, 773 (1960). Whether in fact a parent will be ordered to pay or contribute to the expenses of a college or other advanced education is controlled by an application of the principles set forth in Rankin v. Bobo, 410 So.2d 1326 (Miss. 1982), Hambrick v. Prestwood, 382 So.2d 474 (Miss. 1980), and Pass v. Pass, supra.

Erma Polk argues that the trial court erred in refusing to order LaPlause Polk to pay for Kawanis Polk's college education. LaPlause Polk relies on Hambrick v. Prestwood, 382 So.2d 474 (Miss. 1980), saying that Kawanis' attitude toward him precluded her from receiving this support. The document entitled "Dearest Relatives" purports to inform LaPlause's brothers and sisters about the "most low-down and dirty things" that LaPlause had done, namely having the family home partitioned. The letter went on about this "lowest crime of morality," saying that she and Marcus would in the future refuse to acknowledge LaPlause as their father. She finished by saying that LaPlause "deserve[d] to be whipped, then incarcerated and the key thrown deep into the Mississippi River," and that he would "rot in hell" for everything that he had done. The document entitled "Headline: Father's Eviction Leaves Children Homeless" also talked about the partition of the family home, calling LaPlause's actions "the most hideous crime against morality, the lack of passion, and total disregard of humanity." The document stated that Marcus had suffered while in LaPlause's custody. It ended with an appeal to the public for help.
The fact situation in the case at bar is similar to that in Hambrick, but there are also differences. The language in the documents written by Kawanis is ugly; it was deliberately distributed to some of LaPlause's relatives; some of it was written just before the hearing, and Kawanis reaffirmed most if not all of it during the hearing. Kawanis' effort to have some of the material published in the local newspaper is disturbing. On the other hand, Kawanis *131 testified that she does love her father, although this could be seen as self-serving. Also, the problems appear to be partly LaPlause's fault. It is not difficult to understand that a child could be upset by having his or her family home sold out from under them. Also, LaPlause seems to have abandoned Kawanis, either emotionally or financially, and the mere fact that she is in the custody of her mother is not justification for this. The denial of college funds for Kawanis is reversed, and on remand the trial court should once again consider this question, particularly if there has been any softening of Kawanis' attitude toward her father in the interim. The chancery court judgment dealing with disbursement of funds from the partition of the Polk home is affirmed. That part of the judgment dealing with the custody of Marcus Polk and the support of Kawanis Polk is reversed and remanded for further proceedings.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
HAWKINS, P.J., and ROBERTSON, SULLIVAN and BANKS, JJ., concur.
ROY NOBLE LEE, C.J., concurs in part and dissents in part by separate written opinion joined by DAN M. LEE, P.J., and McRAE, J.
PRATHER, J., dissents in part by separate written opinion.
ROY NOBLE LEE, Chief Justice, concurring in part, dissenting in part:
I concur with all the majority opinion, except for two phases of it, as to which I dissent, i.e., (1) reversing and remanding to the lower court on whether or not LaPlause Polk, father of Kawanis, should be required to afford her support, tuition and expenses for college education and, (2) remanding the case as to Marcus Polk for the purpose of determining whether or not his custody should be granted to Erma J. Polk, appellant and mother of Marcus.
As to Kawanis Polk, Hambrick v. Prestwood, 382 So.2d 474 (Miss. 1980) and Pass v. Pass, 238 Miss. 449, 458-59, 118 So.2d 769, 773 (1960) control. In Hambrick quoting Pass, the Court said:
"[W]e hold that where the minor child is worthy of and qualified for a college education and shows an aptitude thereof it is the primary duty of the father, if in reason financially able to do so, to provide funds for the college education of his minor child in the custody of the mother, where the mother and father are divorced and living apart." (emphasis added).
Hambrick 382 So.2d at 477, (quoting Pass v. Pass, 238 Miss. 449, 458-59, 118 So.2d 769, 773 (1960)).
After quoting the above principle from Pass, Justice Harry Walker for the Court in Hambrick set forth that Cynthia, daughter of the parties, was nineteen years of age and desired to attend Mississippi State University in September 1979, and that her father should be required to pay for her tuition, travel expenses, necessary clothing and other incidental expenses. Cynthia's testimony indicated that she had not had any contact with her father for six or seven years and did not want to have any contact with him; that she disliked him, categorizing it as close to "hate"; that she would not visit her father; that when she entered Hinds Junior College, she did not list Hambrick as her father but listed her parents as Mr. and Mrs. J.T. Prestwood. Under those circumstances, the Court was of the opinion, and so held, that the father should be relieved of any further obligations to support or educate that nineteen-year-old young lady.
The attitude and actions of Kawanis toward her father, LaPlause Polk, have been much more egregious than that in Hambrick. In addition to her actions in having nothing to do with her father and demeaning him to anybody who would listen, including Polk's brothers, sisters and other members of his family, Kawanis wrote a despicable letter to the brothers and sisters of her father expressing hate and contempt for him. Excerpts of the letter follow:
Dearest Relatives,
I would like to inform you of the most low-down and dirty things that our father *132 (your Brother) has done to his children.
... .
He has managed to take our pride, dignity, and now our roof right from beneath us [sic]. How Cruel!!! Marcus and I, refuse to, at any point or time after this, call or acknowledge that he is our father/daddy, or any other superior male figure. He is out of our lives.

... .
Mr. LaPlause Polk now has given us now [sic] choice in life. He is no kind of a man.
... .
He deserves to be whipped, then incarcerated and the key thrown deep into the Mississippi River.
... .
He abandoned us  not we abandoned him [sic]. For that we are treated this way. He has hurt us, scared us for life, and made a total fool of himself.
... .
We are sadden [sic] that LaPlause has sunken to such levels to make us a part of the nation's statistics (Homeless, abused, and neglected). For ten years, playing with our lives. All evidence shows the truth about him  he does give a damn of what happens to any of his kids. As you know, God does not tolerate wrong-doers in his kingdom. And I know LaPlause Polk will not make it to heaven. He will "rot" in hell for everything that he has done to cause this chaos.
Kawanis also delivered a proposed news item to the local county paper entitled "HEADLINE: FATHER'S EVICTION LEAVES CHILDREN HOMELESS" which she tried to get published.
Kawanis was eighteen at the time of the trial and is nineteen now. The ball is in her court and she should make some effort for reconciliation between her and her father. Time is of the essence. If she has sincerely changed her attitude, it probably would effectively change the position of Mr. Polk. At any rate, in my opinion, the chancellor is not manifestly wrong in his decision of applying the law, but is manifestly correct.
As to Marcus, he was twelve years old at the time of trial and is now fourteen. I recognize the fact that when a child becomes fourteen, he has a mind of his own with reference to choosing one parent against another. It is difficult to enforce an order of custody. However, the chancellor has had long and wide experience in child custody matters. He saw and heard the parents and Kawanis and Marcus testify. I am of the opinion that he acted in the best interest of Marcus. Certainly, he was not manifestly wrong in his decision that the custody of Marcus should remain in his father. Therefore, I would affirm the learned chancellor.
For the reasons stated, I dissent.
DAN M. LEE, P.J., and McRAE, J., join this opinion.
PRATHER, Justice, dissenting in part:
I respectfully dissent in part to the majority opinion regarding the disbursement of funds from the partition sale of the property. LaPlause moved to disburse the $30,000 funds received from the sale of the homestead and sought rental credits from his ex-wife. Erma Polk filed a cross-motion for disbursement of funds also. She sought credit for $4,267.45 allegedly paid by her on the mortgage and property ad valorem taxes of $693.93.
The court held the proof to be insufficient to grant her any relief and denied her any credit. Admittedly, Erma's proof was not the best evidence, and the record is unclear as to whether the claimed mortgage payments and taxes were paid by her before the sale of the home or after. However, the court charged her with a fair rental of $200 per month for use of the home for her and the children from the date that LaPlause bought the property. In order to accomplish equity to both parties, the chancery court would have been *133 within its authority to require further proof as to when and in what amount she paid the mortgage payment and taxes on this house by proper records. Warner's Griffith, Mississippi Chancery Practice § 595, at 417 (1991). Had Erma Polk's payments been made after the date of LaPlause's purchase of the home, then equity would dictate that she should be given credit for those sums for payment of the mortgage and taxes, in light of the fact that she was charged with rent. I am of the opinion that her testimony that her "monthly house note was $243" and that she spent "a little better than $4,000" was sufficient for the chancellor to award her credit for sums paid after LaPlause's purchase of the house. Admittedly, better evidence could have been introduced by her attorney, but LaPlause should not have been allowed to be unjustly enriched by Erma's payment of the mortgage and court-ordered rent as well.
The chancery court has the authority to grant equitable relief, and in this case a double charge to Erma Polk does not accomplish equity. For this reason, I dissent as to this feature.
NOTES
[1] Darien Polk was born on September 24, 1968. He is emancipated and his custody and support are not at issue in this appeal. Kawanis Polk was born on January 19, 1972. Marcus Polk was born on June 22, 1977.