PAYNE, J.,
dissenting:
¶ 21. While assigning utmost respect to those judges joining the majority opinion, I must take serious exception to their treatment of particular issues, namely custody of John Curtiss, child support, Donald’s failure to provide medical insurance for the children and Donald’s failure to file a proper financial statement with the court. At the outset and throughout this dissenting opinion, I endeavor to fill in pertinent factual gaps which I find are important to the resolution of this case.
¶ 22. The Curtisses were married on February 22, 1963, and ten children were born to this marriage. Four children were minors at the filing of divorce: John 17, Paul 14, Joel 12, and Joshua 9. Linda and Donald separated in August 1996 and were divorced in February 1998 on the grounds *148 of irreconcilable differences. Issues of child custody, child support, a division of certain property rights and alimony were reserved for the chancellor’s decision. The chancellor awarded custody of John Curtiss to Donald and custody of the three other minor children to Linda, each parent retaining visitation rights of the children in the other’s care. Pursuant to the divorce decree, Donald was to maintain the four minor children on both his military medical insurance and employer’s insurance and pay child support for only two children; the chancellor reasoned that support for the third was negated as Donald retained custody of the fourth child and the judge did not order Linda to pay child support for him.
¶ 23. At the outset, I take notice that in its opinion the majority failed to acknowledge that Donald, the appellee, did not file a brief on this appeal. In such an instance, this Court is to accept as true the appellant’s stated factual allegations, deeming the appellee’s failure to file a brief as an admission of the facts stated in appellant’s brief. “We have held that ‘[fjailure to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error.’ ” Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997) (quoting Dethlefs v. Beau Maison Dev. Corp., 458 So.2d 714, 717 (Miss.1984)). In some instances, it appears the majority opted to argue the appellee’s case for him, taking “his side” when questions of fact arose. This practice is contrary to the above rule, and I find the majority erred in its resolution of certain issues described in this dissenting opinion.

I. Custody of John Curtiss

¶ 24. In its first issue, the majority affirmed the chancellor’s decision not to modify custody of John Curtiss, the eighteen year old son. There is no evidence to support such a decision. With the original judgment, Donald was awarded custody of John, the oldest minor child, who was seventeen at the time; Linda was awarded custody of the three younger boys. Linda asserts that John only lived with his father until June 1998, which was four months after the divorce, and that John has lived with his adult sister since that time with his mother paying his sister sixty dollars per month toward his expenses. As is well-known, the two prerequisites for modification of child custody are a material change in circumstances and a showing that the best interests of the child require a change in custody. Pace v. Owens, 511 So.2d 489, 490 (Miss.1987) (citations omitted). In the original divorce decree, the chancellor stated one reason for awarding custody of John Curtiss to his father was to allow the child to attend high school nearby. Also, at that time, John Curtiss stated no preference as to which parent with whom he wished to live. If we compare the situation at the time of the custody order in the divorce decree to the present situation we find the following: at the time of the case sub judice, John is living with his older sister, as he has been since June 1998; Linda has been paying the older sister sixty dollars a month to help support John, and the sister testified that Linda also provides John with other necessities; Donald has provided little or no support to John since gaining legal custody of the son; Donald’s girlfriend lives with him; and Donald spends many nights away from home, which left John alone with no means of transportation except for a bicycle. Weighing the changes in Donald’s living environment against the unsatisfactory care that Donald has provided John and the support and willingness of Linda to resume custody, it is obvious that *149 a material change in circumstances has evolved whereby the best interests of John Curtiss require that his legal custody change from his father to his mother. The majority’s finding that John lived with his adult sister does not change the fact that (1) Donald had legal custody of the child, but his mother was providing the only support from a parent, and (2) the circumstances proved that John’s best interests would best be served were legal custody placed in his mother.
¶ 25. In addition to finding that a material change in circumstances has occurred which warrants a change in custody, I also note the fact that at the hearing on the motion for modification on this matter, John expressed a desire to live with his mother. Therefore, the AZSnp'/itguidelines come into play. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). One of those guidelines is to consider the age of the child and the preference of the child as to the parent with whom he or she wishes to live.[1]
¶ 26. In Polk v. Polk, 589 So.2d 123 (Miss.1991), the court addressed this issue in a case similar to the present, and the non-eustodial mother relied on Miss.Code Ann. § 93-11-65 (Supp.1990), which provides in pertinent part:
Provided, however, that if the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for the care and maintenance of the children, and that it would be to the best interest and welfare of the children, then any such child who shall have reached his twelfth birthday shall have the privilege of choosing the parent with whom he shall live.
Miss.Code Ann. § 93-11-65 (Supp.1990). In Polk, a son who was placed in the custody of the father but actually was living with the mother because the father failed to provide proper care for the child. Polk, 589 So.2d at 127. Based on his finding that the son’s testimony was not credible, the chancellor found that no substantial change in circumstances had occurred. Id. at 129. The supreme court agreed that the chancellor, sitting as the finder of fact, had the right to so find, but remanded the case with instructions declaring the following:
Marcus appears not to have much of a relationship left with his father, and his testimony, however confusing, was clear on one matter — he wanted to remain with his mother. As Marcus had reached the age of twelve, he had the privilege, under § 93-11-65, to choose the parent with which he would live, as long as the chancellor found that the choice was in Marcus’ best interest and the other requirements of the statute were met.... As to whether there has been a substantial and material change *150 in circumstances, we find that the lower court should consider the fact that Marcus has chosen to live with his mother, as well as the fact that Marcus has passed twelve years of age and may qualify under § 93-11-65, as factors to be considered on remand along with any other evidence the parties may wish to produce.
Polk, 589 So.2d at 130. I read the statute, particularly in view of Polk, to be such that if a twelve year old child is otherwise reasonable and intelligent, and if a material change in circumstances has occurred, the chancellor, in deciding whether to change custody, should consider the child’s choice of which parent with whom he or she wishes to live. There was no articulated finding by the chancellor that he made this consideration. Following the Polk rule, I would accept John’s decision to live with his mother and change legal custody from the father to the mother.
¶ 27. Our supreme court has stated many times that the polestar consideration in custody cases is the best interest and welfare of the child. See Albright, 437 So.2d at 1006. In the present case, John is a child of eighteen years, has expressed a desire to live with his mother rather than his father, and has cited numerous reasons why such change in custody should occur. This Court recently addressed this issue in Rodgers v. Taylor, 755 So.2d 33 (Miss.Ct. App.1999). In Rodgers, Karen, the mother, sought modification of the chancellor’s previous ruling awarding custody of the minor child to the father. She asserted that the chancellor erred in using the Al-bright factors to reach his decision in the modification hearing, stating that the Al-bright factors were only for use in a custody hearing. Karen argued that the chancellor should have only considered whether a material change in circumstances had occurred and, if it had, whether the best interests of the child required a modification of custody. This Court disagreed with Karen, holding that once a material change is identified, the Albright factors may be used to determine the best interests of the child for custody purposes. Rodgers, 755 So.2d at 37 (¶ 15).
¶ 28. In McCracking v. McCracking, as well, this Court stated that, “Once such a change of circumstance has been found, the factors in Albright v. Albright ought to play a significant role in the chancellor’s ultimate determination of a suitable custody arrangement.” McCracking v. McCracking, 776 So.2d 691 (Miss.Ct.App. 2000). In view of the above-cited cases and in light of the material change in circumstances I have previously described, I find that the chancellor should have considered this seventeen-year-old’s stated desire to live with his mother, along with the other factors previously mentioned that support a change of custody from the father to the mother. Accordingly, I find the chancellor abused his discretion in failing to modify custody of John Curtiss from Donald to Linda.
¶ 29. I take exception to the majority’s contention that since John lives with his adult sister that the issue of custody is not one with which to contend. The majority neglects to realize that Linda provides John with necessities and provides a monthly allowance to the older sister to aid in John’s care. There was no hint that John was emancipated nor that the sister had a duty to support him. The majority’s conclusion that Linda’s seeking custody is merely to permit her to obtain additional child support is unfounded and a “slap in the face” to this mother who has continuously cared for her son while the custodial father has neglected to do so. The chancellor abused his discretion in failing to *151 change custody to Linda and I would reverse on this issue.

II. Child support

¶ 30. The majority states that since they did not opt to alter the child custody arrangement that no additional child support is due. As I have disagreed with the majority’s conclusion concerning custody, I also disagree with their decision not to alter the child support.
¶ 31.1 am very aggrieved by the majority opinion’s failure to realize that the issue of child support must be revisited and amended. By allowing the chancellor’s ruling on the child support issue to stand, this Court is essentially doubling Linda Curtiss’s child support obligation. She has legal custody of three children and gets child support for only two of those three children, by virtue of the chancellor’s prior arrangement which “canceled out” John, the one child in Donald’s legal custody, for one of the three children in Linda’s legal custody. Considering her financial support for John, who is living with his sister and would otherwise have no means to support himself, Linda is essentially having to support four children, while only getting child support for two. Thus, our decision today endorses this unreasonable burden on Linda that has resulted from the chancellor’s original error in setting support and in the chancellor’s failure to recognize that, though he was in his father’s legal custody, John Curtiss receives no support from his father to meet his basic needs for shelter, food and other necessities.
¶ 32. Having stated that custody of John should be changed to his mother, I would point out additional facts about the child support arrangement, namely that the chancellor erred in deviating from established statutory guidelines. Linda asserts the chancellor erred in awarding her child support based on only two of the three children in her custody. Mississippi Code Annotated § 43-19-101 (Supp.1999) mandates that twenty percent of Donald’s gross income should be given to Linda for child support, which is the statutory amount for two children. Linda argues that since she was supporting John, over whom Donald had legal custody, she should be entitled to twenty-four percent, which is the statutory amount for four children. Linda’s reasoning is that since she supported John, the chancellor’s prior “canceling out” of her third child for purposes of child support calculations should be rescinded, and that she should be paid support for all four children. In light of my conclusion that custody of John Curtiss should be changed to his mother, I find that the proper statutory child support due Linda for care of the four children is twenty-four percent of Donald’s adjusted gross income, since Linda would retain custody of four children and Donald would have custody of no children. Even if not, at the very least Donald should be ordered to pay child support for three children in Linda’s legal custody.
¶ 33. Here, the chancellor opted to deviate from the statute in calculating child support. Although the court can vary from statutory guidelines, as the chancellor did here regarding modification of the statutory guidelines to “cancel” out children in calculating child support, in such instances the chancellor should state on the record his reasons for doing so as the law does not provide for “swapping kids” to calculate child support, and on the record interpretations are necessary for analysis on appeal. See White v. White, 722 So.2d 731 (¶ 35) (Miss.Ct.App.1998) (“Findings of fact and conclusions of law must be on the record as to the reasons underlying the chancellor’s departure from the stat *152 ute. Statutory demands are mandatory and not permissive.”) (citations omitted).
¶ 34. With the Curtiss’s case, in deviating from the statutory guidelines I can only reason that the chancellor failed to take into consideration the relative earning capacities of each parent, which is another factor to be considered in child support,[2] and essentially concluded that each party was economically equal for child support purposes. Had the chancellor described his reasoning or insight in the record as to his rationalization in deviating from statutory guidelines, I perhaps would not be so constrained on appeal to reverse his erroneous behavior. Whatever his reasoning, the chancellor was obligated to make an on-the-record showing of his reason for straying from the rule, and he abused his discretion in not stating such reasoning. I disagree with the majority’s affirmance of the chancellor’s ruling on the issue of child support.

III. Medical insurance

¶ 35. The majority found the chancellor to be in error in failing to address whether or not Donald was in contempt for failing to obtain additional health insurance coverage beyond his CHAMPUS insurance. While I agree with the majority on this general conclusion, I disagree with the majority opinion in its finding that no sanction was necessary since Donald, in turn, had “punished himself’ by opting to pay those health costs not covered by his CHAMPUS insurance. In its decision, the majority is essentially allowing Donald to “opt out” of following the court’s previous directive, merely because it would make more financial sense for Donald. In our system of jurisprudence, I do not recall that this method of behavior is an acceptable one. As I see it, this case is between an unconcerned father who does not want to be responsible for his children and a mother who is forced to “take up the slack” and care for these children. Donald’s choice might be more defendable if he, in fact, had actually paid the excess over that which CHAMPUS covered. However, the record and appellant’s brief show that Donald did not even pay these costs he agreed that he would pay. His “self punishment” was lighter than a suspended sentence.
¶ 36. I would call attention to certain facts that the majority omitted of which the chancellor should have taken note. First, Donald alleged he should be relieved from payment of past medical bills since Linda failed to act in good faith and purposely took their children to expensive specialists, running up high medical bills to “get back” at him. However, in reviewing the transcript of Donald’s testimony, he admitted that he generally did not know the reasons for the children’s ailments, nor did he ever call any of their doctors to find out about the children’s diagnoses. As well, Donald admitted that he never even inquired into the cost of family medical insurance with his employer, only stating *153 that “I just know it’s always been high.” Donald stated that it was more financially feasible for him to just pay the costs incurred beyond the seventy-five percent that CHAMPUS paid than to pay a monthly amount for additional insurance through his employer which he surmised would certainly be higher than this out-of-pocket option he had selected. This is an odd conclusion for Donald to make, considering that he estimated that the cost of such family insurance would be approximately two hundred dollars, and he was then incurring (but refusing to pay) over that amount monthly to make up for those costs that CHAMPUS did not pay!
¶ 37. The CHAMPUS insurance is entirely free to Donald, The majority says that Donald is being “punished” enough for being in contempt of the chancellor’s order in his opting to pay those costs not covered by CHAMPUS. I strongly disagree because the record shows that he is not paying the costs not covered by CHAMPUS, nor is he paying the insurance premium through his employer. The majority opinion is allowing Donald to get away “scot free” without paying for insurance through his employer, as was required in the chancellor’s order. Donald blatantly and admittedly violated this order and is therefore in contempt, whatever his rationale or excuse for doing so may be.
¶38. In Clements v. Young, 481 So.2d 263 (Miss.1985), the wife petitioned the court to find her ex-husband in contempt for failing to pay, among other things, medical expenses of the children, which motion the chancellor did grant. In Clements, the children required expensive or-thodontal dental treatments, and the father refused to pay the dental bills, stating such bills were too high. In that case, the support agreement required the father to “pay all reasonable and necessary medical and dental expenses of the minor children.” Clements, 481 So.2d at 266. The judge found the dental treatment to fall into this category and ordered the father pay the dental bills.
¶ 39. In the present case, the language used is even more broad. The agreement requires Donald “to maintain the four dependent children on his medical insurance through his place of employment and through CHAMPUS [his military insurance], and to pay all medical, dental, and drug expenses of the four dependent children not covered by this insurance.” This terminology leaves no loopholes or “reasonableness” tests to perform as did the provision in Clements; thus, Donald should be required to pay all expenses of the children.
¶ 40. I realize that the medical costs of this family may be higher than other comparable families — of the four minor Curtiss children, one child suffers from severe asthma and respiratory problems and another child has attention deficit disorder. These two ailments alone require more than one hundred dollars per month in medicines. Additionally, with the sports activities in which these boys are participants, additional injuries are a probability and often a reality. Thus, the remand does not support a finding that the amounts incurred for medical care for these children are exorbitant.
¶ 41.1 find most disturbing and consider to be an abuse of discretion the chancellor’s requirement that Linda gain Donald’s permission before incurring medical expenses for the children. The chancellor directed that beginning February 1999 and each month thereafter, in the event that the dependent children required medical, dental, or drug expenses over and above a total of fifty dollars per month cumulative for all four minor children, the parties were to mutually agree upon the expense *154 before it was incurred; otherwise, Donald would not be required to pay any expenses not covered by CHAMPUS, his military insurance. This order essentially permits only $12.50 per child per month for medical treatments, which I find an impossibility to meet, since one of the minor children suffers from severe asthma and another child suffers from attention deficit disorder. The costs of treating both ailments alone exceed one hundred dollars per month, not considering other illnesses that may arise with these two or the other two children. As well, the minor child suffering from asthma also has experienced several acute asthma attacks in the past requiring expensive emergency treatments. Such emergency situations do not lend themselves to delay to obtain Donald’s permission for treatment. The chancellor’s decision to set a monthly “allowance” by the terms of which it is impossible for Linda to abide most certainly was an abuse of discretion. This especially rings true in light of Donald’s past refusal to pay for those medical expenses over and above what his CHAMPUS insurance covers. I disagree with the majority’s failure to recognize and correct this error.
¶42. For the chancellor’s clarification and instruction on remand, I would add that I disagree with the badgering of Linda Curtiss that took place at the lower level which involved scrutinizing and questioning why she could find no better paying job than that of a substitute teacher/teacher’s aid, and whether a promotion to a higher paying job would allow Linda to afford insurance on the children. I would call attention to Linda’s thirty-five years experience as a homemaker and mother and add that without any educational or on-the-job experience, this middle-aged inexperienced woman’s finding this steady full-time job is something for which I am certain she is grateful. Donald should never have even addressed the question of Linda’s financial ability or inability to provide family insurance on her boys as her take-home pay of $500 per month was not up for grabs in an insurance battle and because the chancellor ruled that Donald was responsible for this coverage.

TV. Financial statement

¶ 43. The majority argues that the issue of Donald’s failure to provide a Rule 8.05 financial statement is proeedurally barred. The record shows Linda’s attorney objected and the court reserved ruling until later. However, a careful review will show that before such “bar” came into effect, the chancellor erred in failing to require Donald to provide this information to the court. Reviewing the financial information sheet that Donald submitted, the information provided is hardly sufficient to allow the chancellor to properly determine the exact amount of Donald’s income and to calculate the proper statutory amount of child support to award based on such income.
¶ 44. Looking to the transcript, the chancellor admonished the attorneys concerning the financial papers Donald submitted saying, “when you get ready to cross-examine, if [the financial statement is] not complete, we’ll take a recess and let [Donald and his attorney] complete it.” Later in the record there is no indication such addendum was made to the submitted financial statement, nor is any such additional financial information contained in the record or exhibits. Though the majority rules that Linda’s failure to object to Donald’s not providing additional information bars her ability to object on appeal, with such incomplete data on Donald’s financial status, the chancellor could not have used proper discretion in calculating child support.
*155 ¶45. Though Donald elected not to do so, Linda did complete the proscribed Rule 8.05 statement. In order to compare “apples to apples,” I would remind the chancellor that he must have the Rule 8.05 data on Donald to make a comparative analysis and therefrom to determine the gross income of each party from which to calculate an order for child support. As the chancellor abused his discretion in failing to require Donald to provide such information, I would reverse and remand on this issue and instruct the chancellor to obtain Donald’s appropriate financial data in order to make an informed calculation concerning child support for all four children and not just two.
¶46. I am deeply concerned with the majority’s resolution of this case as I feel it opens the door for future decisions which discourage parental responsibility and may leave children “suspended” between custody of two parents, one of whom provides care for the child and the other of whom does not. Also, this resolution awards no child support for the third child in Linda’s custody. With its opinion the majority bypasses established rules and caselaw that I find precedential and controlling in this matter, as I have previously stated. Accordingly, I must respectfully dissent to the matters described herein.
KING, P.J., AND LEE, J., JOIN THIS SEPARATE WRITTEN OPINION.

. The Albright factors used to determine child custody are enunciated in Cavett v. Cavett, 744 So.2d 372 (¶ 14) (Miss.Ct.App.1999) as follows:
1) age of the child;
2) health and sex of the child;
3) determination of the parent that had the continuity of care prior to the separation;
4) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
5) the employment of the parent and responsibilities of that employment;
6) physical and mental health and age of the parents;
7) emotional ties of parent and child;
8) moral fitness of parents;
9) the home, school and community record of the child;
10) the preference of the child at the age sufficient to express a preference by law;
11) stability of home environment and employment of each parent; and
12) other factors relevant to the parent-child relationship.

.As stated in Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss. 1992), "In awarding child support a chancellor should consider the factors established in Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955). Those factors are:
1. the health of the husband and his earning capacity;
2. the health of the wife and her earning capacity;
3. the entire sources of income for both parties;
4. the reasonable needs of the wife;
5. the reasonable needs of the child;
6. the necessary living expenses of the husband;
7. the estimated amount of income taxes the respective parties must pay on their incomes;
8. the fact that the wife has the free use of the home, furnishings, and automobile, and
9. such other facts and circumstances bearing on the subject that might be shown by the evidence.”