BARNES, J.,
concurring in part and dissenting in part:
¶ 25. I concur with the majority’s findings regarding Issues I and III. As to Issue II, I also agree that the chancellor’s modification of custody warrants' reversal. *76 However, I dissent from the majority’s decision to remand for further findings. The custody modification was based solely on Ashley’s preference to live with her father in Mississippi, and there simply was no evidence presented that a material change in circumstances adversely affecting Ashley had occurred in the custodial home. See Self v. Lewis, 64 So.3d 578, 584 (¶ 29) (Miss.Ct.App.2011). Therefore, I would render the chancery court’s judgment and return Ashley to her mother’s custody.
¶ 26. It is clear from the record that the only basis for the modification of custody was Ashley’s preference. Thomas provided no evidence of a material change in circumstances; nor did the chancellor make any factual findings that a material change in circumstances had occurred. When asked on cross-examination if there was any other basis for the request for modification, other than the child’s preference, Thomas admitted: “No, ma’am.” Ashley freely admitted that she loved both parents and that she experienced a stable and satisfactory atmosphere in both homes. In regard to accommodations, she stated that “both are really nice houses.” Ashley also stated she had a good relationship with her mother and that they were “like sisters.” She said they had no disagreements, other than normal parent-child arguments. She noted that she and her mother would go shopping and to the movies, and that her mother even took her occasionally to a local rock-climbing facility. She also testified that her mom was supportive of her calling her dad whenever she wanted. Similarly, she enjoyed activities with her father, participating in hunting, camping, and fishing. She was the same age as her step-sister in Mississippi, and they were friends.
¶ 27. “A child’s preference of where to live is a factor to be considered in determining child custody.” Potts v. Windham, 56 So.3d 589, 593 (¶ 15) (Miss.Ct.App.2011) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)). However, if there is no finding of a material change in circumstances, then there is no occasion for an analysis of the Albright factors. See id. In a similar case, Dykes v. McMurry, 938 So.2d 330 (Miss.Ct.App.2006), we upheld a chancellor’s refusal to modify custody, as the only basis for modification presented by the non-custodial parent was one of the children’s stated preference to live with his father. We noted that there was no evidence that the child suffered any abuse or felt threatened at his custodial home; in fact, the child appeared to be “healthy and well-adjusted in his mother’s home.” Id. at 336 (¶22). Therefore, we concluded that the evidence was insufficient “to show there ha[d] been a material change in circumstances adverse to his children’s well-being sufficient to warrant a change in custody.” Id. This Court has recognized:
Mississippi Code Annotated Section 93-11-65 (Rev.2004) allows a child who has attained the age of 12 to state her preference to the court as to whether she would rather live with her mother or father. However, the trial court is not bound to follow the child’s preference. See Polk v. Polk, 589 So.2d 123 (Miss.1991). Furthermore, we have found no authority to support a conclusion that a child’s statement, in and of itself, of his or her preference to live with the noncustodial parent would rise to the level of a material or substantial change of circumstances.
In re E.C.P., 918 So.2d 809, 824 (¶62) (Miss.Ct.App.2005) (emphasis added); see also Best v. Hinton, 838 So.2d 306, 308 (¶ 8) (Miss.Ct.App.2002) (modification of custody based upon the child’s preference was reversed because “such an expression, supported by nothing more ” is not “the type of adverse material change in circum *77 stance that would warrant a custody modification.”) (emphasis added). Were it otherwise, a child might attempt to blackmail the custodial parent into granting favors for fear of losing custody; or a non-custodial parent might attempt to bribe the child into requesting a change in custody.
¶ 28. In determining whether to modify custody, the chancellor noted Ashley’s testimony that she felt uncomfortable around her stepfather. During the in camera testimony before the chancellor, Ashley explained:
A. It’s because of my stepdad, like, I just — I feel kind of nervous around him. Like, I know he’s not going to physically hurt me or anything.
Q. Right.
A. But I’m also scared for my mom because he has threatened her before. It’s only happened once, and it was a really big fight. But that still really freaked me out.
[[Image here]]
So, yes, I was in the house and it was just scary for me to be there because we had — it was the first year we moved there, so I was only, like, eight or nine.
(Emphasis added). The chancellor later observed:
She — I know, Mom, that you testified that she and her stepfather were very close and spend a lot of time together. That is not what I got from her. She said she’s very nervous around her stepfather. She is uncomfortable around him, and she is fearful at times for you.... She feels uncomfortable. She feels — she doesn’t feel very close to him.
However, the incident where Dawn and her husband fought happened on only one occasion, two years before any petition for modification was filed. In a recent case, Potts, 56 So.3d at 593 (¶ 14), this Court affirmed the chancellor’s findings that allegations the child’s mother and stepfather argued and cursed in front of the child, and two occasions of physical violence between the mother and her husband, described as “isolated incidents,” were “insufficient to warrant a modification of custody.” Ashley acknowledged that she was in no danger, and Dawn gave no indication that there was any trouble in the marriage. Ashley also admitted that she was rarely disciplined, stating that her stepfather had grounded her on only one occasion for not doing her homework. Dawn testified that the only change that has occurred in the family recently was that she had given birth nine months prior to the hearing. Dawn quit her part-time job as a result and was a stay-at-home mom.
¶ 29. The chancellor also noted Ashley’s testimony that her family in Colorado did not do a lot of activities as a whole family, which the chancellor compared to the testimony that her Mississippi family did activities “as a family.” Ashley stated that some Colorado family activities, such as going to church regularly, did not include her stepfather; however, Dawn explained that was because he was a different religious denomination and went to his own church. Plus, it was noted that family activities had declined because of the arrival of the new baby. None of these incidences warrant a finding of a material change in circumstances adversely affecting the welfare of the child. The issue of custody is extremely important to a family, which is why this standard is so crucial to the determination of whether custody should be modified.
¶ 30. In Ortega v. Lovell, 725 So.2d 199, 204 (¶ 26) (Miss.1998), the Mississippi Supreme Court held that “[bjecause there was no showing of a material change in *78 circumstances,” the chancellor erred in modifying custody, and it reversed and rendered the judgment of the chancery court. In this case, the chancellor simply stated that the modification was in the “best interest of the child,” and made no attempt to discuss whether there was a material change in circumstances in Dawn’s home adversely affecting Ashley’s welfare. Furthermore, the record would not support such a finding.
¶ 31. Accordingly, I would reverse and render the chancellor’s judgment and return Ashley to the custody of her mother.
IRVING AND GRIFFIS, P.JJ., JOIN THIS OPINION.