511 So.2d 489 (1987)
Edward Leo PACE
v.
Janice Elaine Davis Pace OWENS.
No. 57063.
Supreme Court of Mississippi.
August 5, 1987.
Lester Clark, Jr., Clark & Clark, Hattiesburg, for appellant.
James R. Hayden, Hattiesburg, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This is one of those cases requiring that we set aside our exasperation with the human animal, adult variety, and try to minimize the impact of his folly upon his children. Two ex-spouses, each inspired by their new spouses, and dislike for each other's, have hurled charge and countercharge to the point where we wonder if either truly cares for the two children involved.
In the end, the Chancery Court made quite specific and detailed provisions for custody and visitation, such as befits a case where no one will agree even on the time of day. Alas, that Court failed to resolve any of the ultimate issues tendered by this child custody modification mess. As explained below, we have no alternative but to affirm and remand, hoping against hope that today will not be the first day of the rest of the trouble.

II.
Pursuant to our Irreconcilable Differences Divorce Act, Miss. Code Ann. § 93-5-2 (Supp. 1981), Janice Pace Owens and Edward Leo Pace were divorced in Lamar County. The final decree of divorce was entered January 13, 1981. Janice Pace Owens *490 was granted custody of the two children, Nicki Pace, born August 13, 1976, and Ronald Clifford Pace, born May 23, 1980. Leo Pace was granted reasonable visitation rights in an agreed property and child custody agreement attached to the final decree of divorce, dated June 9, 1981.
Both parties married other persons in 1981, and thence began the trouble. Between the fall of 1981 and the first full hearing in today's cause in July of 1985, tremendous animosity developed between the former spouses over the matter of the children. This animosity culminated in charges, by Janice Owens against Ruby Pace, Leo Pace's new wife, of physical abuse of the five year old Cliff, and Leo Pace's counter charges against Janice of sexual abuse of Cliff.
On May 25, 1984, Janice Pace Owens filed a motion for contempt and a motion for modification of final decree, alleging that Leo Pace was in arrears in child support and that the children were subjected to various acts of child abuse at the hands of Leo Pace and present wife Ruby Pace. On June 18, 1984, Leo Pace answered denying Janice's allegations and filing his own cross-petition for modification of final decree. He alleged a material change in circumstances in the custodial home which adversely affected the children; he claimed that the children had been subjected to abuse by Janice and her new husband. Between June 18, 1984, and the final hearing in July, 1985, various temporary orders were entered by the court setting out visitation rights. Both step-parents, Ruby Pace and David Owens, were prohibited from punishing the children and were directed not to be left alone with the children until a final hearing in this case.
On July 16, 17, and 18, 1985, the Chancery Court of Lamar County heard the matter as a suit for modification of custody of two minor children. At the conclusion thereof, the Court denied the relief sought by Edward Leo Pace  the permanent, care, custody and control of the minors. The Court held that Janice Elaine Davis Pace Owens and Edward Leo Pace were to have joint legal custody of the minor children, Nicki and Cliff Pace; Janice Pace Owens was to have physical custody of the children. Leo Pace was to have quite liberal visitation rights as set out in great detail in the order of the court entered August 7, 1985.
From that judgment, Leo Pace appeals.

III.
Leo Pace presents five assignments of error, four of which require no discussion in view of the disposition we must make of this appeal. We consider only Pace's charge that the evidence was such that we should reverse and render on the Chancery Court's denial of his demand for custody of the children.
There are in our law two prerequisites to a modification of child custody. First, the moving party must prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); see also Duran v. Weaver, 495 So.2d 1355, 1357 (Miss. 1986); Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Cox v. Moulds, 490 So.2d 866, 869, 55 U.S.L.W. 2079 (Miss. 1986); Wade v. Lee, 471 So.2d 1213, 1216 (Miss. 1985); Denney v. Denney, 453 So.2d 693, 694 (Miss. 1984); Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss. 1983).
Employing our accepted totality of the circumstances approach, Leo Pace argues that several facts in the aggregate establish the requisite material change. These facts include Janice Owens' marriage to a man of alleged "violent" temper and unstable work record; Owens' return to work which necessitated her leaving the children with their grandmother or with David Owens, the latter arrangement forbidden by the court; recommendations by psychologists of counseling for the children; Janice Owens' refusal to put the children in counseling; discrepancies in Janice Owens' testimony *491 regarding religious training as contrasted with the religious practices of Leo Pace; scarcity of character witnesses for Janice and David Owens; recommendation of Dr. Sutker that Leo Pace be granted custody; and the unresolved question of responsibility for the Mother's Day 1984 abuse of Cliff Pace.
Of course, Leo's argument runs into the strong headwind of established limitations upon our scope of review, alternately denominated the substantial evidence or manifest error rule the content of which is sufficiently known that it need not be recited here. See Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss. 1986); Wood v. Wood, 495 So.2d 503, 505 (Miss. 1986); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978).
We encounter difficulties in enforcement of this rule in today's case. Before we may consider whether a trial court committed manifest error it must tell us what it did. Similarly, before we may consider whether the record contains substantial evidence consistent with the trial court's findings, we must know what those findings are. Cf. Gavin v. State, 473 So.2d 952, 954-55 (Miss. 1985).
The Chancery Court judgment appealed from is quite specific with respect to the relief granted and, as well, that denied. Almost entirely absent, however, are any findings of fact or conclusions of law upon which it is based. The Chancery Court, insofar as we can ascertain, uttered not a word reflecting its view whether there had been a change of circumstances since the January 1981 divorce decree or whether any such change of circumstances had adversely impacted upon the children. Nor, for that matter, do we find any expression by the Chancery Court regarding its view of the best interests of these children, except such as may be implicit in the custody provision there made.
A matter shrouded in mystery within this case concerns allegations of sexual abuse of Cliff Pace by his mother Janice Pace Owens. As a result of these allegations, which originated with Cliff Pace, the children were temporarily removed from Janice's custody and placed, by the Department of Welfare in April of 1985, in a shelter where they remained for about two months. The only information in the trial record about this important development is contained in the testimony of Janice Owens, Edward Leo Pace, and Father John S. Izrel. This information is meager. The Chancery Court affords us no resolution of the matter.
Another mystery concerns who, on May 13, 1984, before any allegation of sexual abuse in 1985, inflicted the abrasions on the face of Cliff Pace pictured in Exhibit 6. Although Officer Henry M. Bounds testified that Cliff told him Ruby (Mrs. Leo Pace) did it, Mr. and Mrs. Robert Bobinger of Van Cleve and Mrs. Ruby Malone Pace of Hattiesburg, mother of Leo Pace, testified that the child's face did not resemble that shown in the pictures when they last saw the child on May 13, 1984. Leo Pace made an offer of proof that, if Nicki Pace were allowed to testify, she would say, among other accusations, that Janice and David Owens on the day in question had taken Cliff into the bathroom and had beaten him.
The two year old record before us reflects a lengthy hearing which included the introduction into evidence of the reports of four psychologists plus the live testimony of psychologist Patricia B. Sutker, who against her own custom and bias strongly recommended that custody be granted to the natural father. The Chancery Court exercised its acknowledged discretion and declined to put the minor children (eight years 11 months and five and one-half years at trial) through the trauma of testifying. In spite of a twice reported preference of the children to live with their father, the Chancery Court in the end left physical custody with the mother and granted the father visitation rights as set out in the order of August 7, 1985. The Chancery Court made no findings of fact concerning the alleged abuse of the children nor were findings made on any of the ultimate issues tendered by the parties through their pleadings and their proof.
When a trial court makes no specific finding of fact, this Court often assumes *492 that it resolved fact issues in favor of Appellee. Bryant v. Cameron, 473 So.2d 174 (Miss. 1985); Smith v. Todd, 464 So.2d 1155, 1157 (Miss. 1985); Marascalco v. Marascalco, 445 So.2d 1380, 1382 (Miss. 1984); Cotton v. McConnell, 435 So.2d 683 (Miss. 1983); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983); Blakeney v. Blakeney, 244 So.2d 3, 4 (Miss. 1971). Further, when there are no specific findings of fact, we sometimes assume the trial judge made determinations of fact sufficient to support the judgment. Rives v. Peterson, 493 So.2d 316, 317 (Miss. 1986). In such circumstances this Court must look to the evidence and see what state of facts, if any, will justify the decree. Boatright v. Horton, 233 Miss. 444, 447, 102 So.2d 373, 374 (1958).
There are limitations upon this premise. It is one thing to employ algebraic techniques to imply the numerical content of X in the equation 10 + 6 + X = 23. It is altogether different where, as here, we are asked to assume the content of all variables in an equation X + Y + Z = 23. Conversely, confronted with a record of largely unresolved charges and countercharges of child abuse of differing sorts, we simply have not received enough help from the Chancery Court that we may derive the findings it ought to have made.
Beyond this problem, we may not escape the reality that the record before us is two years old. We have nothing to tell us what has happened since the hearing which was held in July of 1985. As we observed in Marascalco v. Marascalco, 445 So.2d 1380 (Miss. 1984),
Common sense tells us that surely any change in custody we might make in such a context would be disastrous for the parties and more importantly for the two minor children.
445 So.2d at 1381.
Following the course we adopted in Marascalco, we affirm the judgment of the Chancery Court not because we are confident that it is correct but because, as a practical matter, there is no other course open to us consistent with our role as appellate chancellors. Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss. 1983); Marascalco, 445 So.2d at 1381. Our disquiet regarding this case leads us to direct that the matter be remanded to the Chancery Court for an updating custody hearing to be held as soon as may be reasonably practicable. At that hearing the Chancery Court is directed to inquire into the circumstances of the children at this time to determine  and find  whether there have been material changes in circumstances adversely affecting the children and whether the present custody arrangement is in their best interests. The Chancery Court, of course, is empowered to make such judgment or order as may be appropriate by reference to the facts and circumstances disclosed at such a hearing. Marascalco, 445 So.2d at 1382-83.
Our direction for an updating custody hearing hardly suggests that the matters respecting the custody of these children can only be resolved by litigation in an adversary context. And, it may well be (as we earnestly hope) that passions have subsided and that the rather detailed custody order entered by the Chancery Court on August 7, 1985, has been moderately successful. Should that be the case, it may be that no such hearing would be necessary.
AFFIRMED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.