755 So.2d 33 (1999)
Karen Taylor (RODGERS), Appellant,
v.
Rodney TAYLOR, Appellee.
No. 98-CA-00647-COA.
Court of Appeals of Mississippi.
July 20, 1999.
Rehearing Denied October 26, 1999.
Certiorari Denied February 17, 2000.
*34 Hallie Gail Bridges, Belzoni, Attorney for Appellant.
Edward J. Bogen, Jr., Leland, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND FACTS
¶ 1. This case is on appeal challenging the judgment of the Chancery Court of Washington County awarding custody of the minor child, Rodney Taylor, Jr., to the biological father, Rodney Taylor. Feeling aggrieved, Karen Taylor Rodgers timely perfected this appeal.
¶ 2. Karen and Rodney were married on March 28, 1992. From this union, a child, Rodney Jr., was born on October 6, 1992. On January 22, 1993, the couple's marital bliss ended with their separation. On April 7, 1993, Karen and Rodney entered into a settlement agreement, granting Karen a divorce on the grounds of irreconcilable differences. As part of that agreement, Karen was awarded physical custody of Rodney, Jr. with Rodney enjoying reasonable visitation rights. Subsequent to the dissolution of their marriage, both parties remarried-Rodney married Aimee on *35 July 22, 1994, and Karen married Ken Rodgers on January 18, 1995.
¶ 3. On November 22, 1994, Rodney filed a petition for modification and other relief, seeking a change in custody from Karen to Rodney that would be in the minor child's best interest based on a material change in circumstance. Rodney also alleged that he had been denied certain visitation privileges with the child. On December 14, 1994, Karen filed a response, denying the material elements of Rodney's petition for modification of child custody and alleging that Rodney had failed to pay some of his child support obligations under their divorce agreement. Further, Karen counter-claimed for additional child support from Rodney.
¶ 4. In the interim, settlement negotiations between the parties occurred in an effort to resolve the issues in Rodney's petition and Karen's counter-petition, and allegations surrounding the possible sexual abuse of the child by Rodney and Aimee Taylor surfaced. After Karen reported the possible abuse to the Washington County Department of Human Services, arrest warrants were issued for Rodney and Aimee on child molestation charges. On August 22, 1996, Rodney and Aimee surrendered themselves on the outstanding child molestation warrants. Both denied the allegations and maintained that the charges were fabricated by Karen in order to defeat Rodney's effort to gain physical custody of Rodney, Jr. Subsequently, the child molestation charges against Rodney and Aimee were dismissed. However, an agreed temporary order, effective until the disposition of Rodney's original petition, was issued restricting Rodney's contact with the minor child. In addition, a guardian ad litem, Wayne O. Lee,[1] was appointed for the minor child.
¶ 5. The chancellor held a hearing on the merits of Rodney's petition for modification and found that the minor child's best interest would be served by changing primary physical custody to Rodney and limiting Karen's visitation to times and places where Ken Rodgers would have no contact with the minor child. From this ruling flowed Karen's appeal.

ISSUES PRESENTED
¶ 6. Karen presents the following issues for our review:
I. WHETHER THE CHANCELLOR ERRED IN ADMITTING TESTIMONY WHICH DID NOT CONFORM TO THE MISSISSIPPI RULES OF EVIDENCE
II. WHETHER THE CHANCELLOR ERRED BY NOT DISMISSING THE PETITION FOR MODIFICATION AT THE CONCLUSION OF THE APPELLEE'S CASE AND IN FAILING TO SUSTAIN APPELLANT'S MOTION TO DO SO?
III. WHETHER THE CHANCELLOR ERRED IN FAILING TO PROTECT THE RIGHTS OF RODNEY, JR. BY FAILING TO INSURE THAT THE GUARDIAN AD LITEM PERFORMED HIS DUTIES AND BY RELEASING THE GUARDIAN AD LITEM PRIOR TO THE TRIAL OF THE PETITION FOR MODIFICATION
IV. WHETHER THE CHANCELLOR APPLIED AN ERRONEOUS LEGAL STANDARD AND COMMITTED MANIFEST ERROR IN MODIFYING THE CUSTODY ARRANGEMENT
V. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN RESTRICTING KAREN'S VISITATION WITH RODNEY JR. BY *36 ORDERING THAT RODNEY, JR. WAS TO NEVER BE ALONE WITH KAREN'S HUSBAND, KEN RODGERS
VI. WHETHER THE CHANCELLOR ERRED IN ORDERING KAREN TO PAY CHILD SUPPORT WHEN SHE IS UNEMPLOYED AND HAS NO FUNDS OF HER OWN AND IS THE MOTHER OF A YOUNG CHILD
¶ 7. Upon review of the record and applicable precedents, we find the chancellor manifestly erred and abused his discretion in modifying the child custody arrangement based on the record. Accordingly, we reverse and render as to Issue IV and order the minor child returned to Karen's custody. As the remaining issues turn on our disposition of Issue IV, and we reverse and render on that issue, the remaining issues are moot and we decline to address them.

ANALYSIS

IV. WHETHER THE CHANCELLOR APPLIED AN ERRONEOUS LEGAL STANDARD AND COMMITTED MANIFEST ERROR IN MODIFYING THE CUSTODY ARRANGEMENT
¶ 8. The pivotal issue in this case is whether the chancellor manifestly erred in modifying the original custody agreement. Karen maintains that the chancellor erred in modifying the custody agreement because he found no material change in circumstances that was adverse to Rodney, Jr. Further, Karen asserts that the chancellor erred in applying the Albright factors, as these factors are determinative of an initial custody placement, not a subsequent modification.
¶ 9. Rodney counters that Karen's instability, Karen's apparent mission to destroy the relationship between Rodney and the minor child, and the testimony presented at the hearing were sufficient to prove a material change in circumstances and that the best interests of the minor child were served by the change in custody.

Standard of Review
¶ 10. "The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." Andrews v. Williams, 723 So.2d 1175, 1177 (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994)) (other citations omitted).

The Law Regarding Modification of Child Custody
¶ 11. The Mississippi Supreme Court has stated:
There are in our law two prerequisites to a modification of child custody. First, the moving party must prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody.
Pace v. Owens, 511 So.2d 489, 490 (Miss. 1987). Recently, the Mississippi Supreme Court reaffirmed the rule in Pace and provided further guidance: "The change in circumstances `is one in the overall living conditions in which the child is found. The `totality of the circumstances' must be considered.'" Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996) (quoting and citing Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984); Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983)). "A change of circumstances in the non-custodial parent is not in and of itself sufficient to warrant *37 a modification of custody." Id. (citing Duran v. Weaver, 495 So.2d 1355, 1357 (Miss. 1986); Bowden v. Fayard, 355 So.2d 662, 664 (Miss.1978)).
¶ 12. In arriving at a visitation arrangement, "[t]he chancellor has broad discretion when determining appropriate visitation and the limitations thereon." Weigand v. Houghton, 730 So.2d 581 (Miss.1999) (citing Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994); White v. Thompson, 569 So.2d 1181 (Miss.1990)). "When the chancellor determines visitation, he must keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child." Id. We will not reverse a chancellor's findings of fact where they are supported by substantial evidence in the record. Id. (citing Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983)). However, we will not hesitate to "reverse when he is manifestly in error in his finding of fact or has abused his discretion." Id. (citing Hammett v. Woods, 602 So.2d 825, 828 (Miss.1992)).
¶ 13. In the case sub judice, the chancellor, admirably, issued a very detailed order outlining the basis for his decision. However, his ultimate decision was not based on substantial and credible evidence in the record. While the chancellor undoubtedly acted in the manner he believed most appropriate, his ultimate decision and the basis for that decision was not supported by the record.
¶ 14. First, Karen cites as error the chancellor's reliance on the Albright factors in determining that a modification was in order. The factors cited by Karen relied on by the chancellor in arriving at his custody decision are familiar:
(1) age, health and sex of the child;
(2) a determination of the parent that has had the continuity of care prior to the separation;
(3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
(4) the employment of the parent and responsibilities of that employment;
(5) physical and mental health and age of the parents;
(6) emotional ties of parent and child;
(7) moral fitness of parents;
(8) the home, school and community record of the child;
(9) the preference of the child at the age sufficient to express a preference by law;
(10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship.
Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 15. Karen maintains that only two considerations are appropriate in a modification hearing: whether a material change in circumstances had occurred since the entry of the settlement agreement and whether the change adversely affected the minor child to a degree that his best interests demand a change in custody. We disagree with Karen's position that the Albright factors were inappropriately considered. Along with the material change in circumstances determination and if such a change has occurred, whether the change warrants a change in custody for the child's best interest, the chancellor properly assessed the Albright factors to the facts as they presently would affect Rodney, Jr.
¶ 16. However, we find inappropriate the chancellor's convoluted effort to weigh the Albright factors by assigning random values to each factor for Karen and Rodney and basing his decision on a total score of the numbers. We find this troubling and riddled with the danger of inconsistent application of these important factors. Child custody matters are of too grave importance to rely on the random nature inherent in such a scoring system. However, *38 the chancellor did attempt to explain the basis of his "score" as to each parent. It is here where the chancellor clearly went behind the record, undoubtedly with the best intentions of Rodney, Jr. in mind, but nonetheless inappropriately and contrary to law. The chancellor manifestly erred in finding that Rodney, Jr.'s best interests demanded his placement with Rodney.
¶ 17. We are unable to locate in the chancellor's opinion his identification of a material change in circumstances that had adversely affected Rodney, Jr.'s well-being. Pace and Riley both plainly require a finding that a material change in circumstances has occurred since the original custody agreement that would affect the minor child's best interests and well-being in order to warrant a modification. Absent such a finding, no modification is appropriate.
¶ 18. Quite obviously, the allegations of sexual abuse in this case are very disturbing. Whether or not the abuse occurred remains an open question. At the time of trial, Rodney, Jr. had not recanted his stories of abuse at the hands of the father and step-mother.[2] In his opinion, the chancellor holds "Little Rodney is markedly better off with Rodney as a role model than he is with Karen, not to mention this Court's grave concerns about the type of role model Ken might be...." The chancellor relied on the expert testimony of Dr. Paul Davey, a licensed professional counselor, who testified that as a general rule it is better for a male child to be in the custody of his father and female child to be in the custody of her mother. This general rule aside, the material change in circumstances threshold was not satisfied. The chancellor's repeated reference to the fact that Ken did not testify and what he would or would not have offered is mere speculation and conjecture and not part of the record on which the chancellor could base his decision. Further, we find reckless the chancellor's following assertion: "The real concern the Court has, though, is Ken. The Court is not convinced that he is not the culprit in the sexual allegations made by the child and, again, without his testimony, has to draw such conclusions from the evidence it has before it." We find no substantial basis in the record even remotely suggesting that Ken may have perpetrated the alleged sexual abuse in this case, with the exception of the testimony of Karen that Rodney, Jr. is modest around Ken. It is evident that the chancellor wanted to hear from Ken. But, it is not the chancellor's job to present Karen's case. For whatever reason, she chose not to call Ken as a witness. However, the chancellor's suggestion that because Ken did not testify that he then may have perpetrated the alleged sexual abuse is a quantum leap which had no factual basis in the record, and which we find reveals the chancellor's bias resulting in his abuse of discretion.
¶ 19. Child custody decisions are some of the most difficult rulings this Court must face. However, in making these decisions we are bound by the record before us. George County Board of Supervisors v. Davis, 721 So.2d 1101, 1104 (Miss.1998). It is vitally important for our trial courts to create a thorough and complete record and to base their decisions on that record and the evidence contained therein. In this case, the chancellor based his modification of custody in the case sub judice largely upon speculation and conjecture and outside of the rule of law in Mississippi regarding child custody modification.
¶ 20. Accordingly, we must reverse and render the chancellor's decision and order custody of Rodney, Jr. be returned to Karen. We stress, however, that our ruling in no way effects Rodney, Sr.'s rights to seek another modification of custody if circumstances so warrant.
*39 ¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF WASHINGTON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLEE.
McMILLIN, C.J., AND KING, P.J., DIAZ, IRVING, AND LEE, JJ., CONCUR.
SOUTHWICK, P.J., CONCURS IN RESULT ONLY.
BRIDGES DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS, J.
MOORE, J., NOT PARTICIPATING.
BRIDGES, J., dissenting:
¶ 22. I respectfully dissent from the majority opinion on Issue IV presented by this appeal. When reviewing a chancellor's decision to modify child custody, this Court's scope of review is limited. The Mississippi Supreme Court has held that on appellate review, a chancellor's findings of fact will not be disturbed if substantial credible evidence support those factual findings. Brooks v. Brooks, 652 So.2d 1113, 1124 (Miss.1995) (citations omitted). In a domestic relations context, this Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong or clearly erroneous, or if an erroneous legal standard was applied. Setser v. Piazza, 644 So.2d 1211, 1215 (Miss.1994) (citations omitted). The majority in this case has opined that the chancellor's ultimate decision was not based on substantial and credible evidence in the record. However, after careful review of the record and the chancellor's findings of fact, I believe that the record contains sufficient credible evidence to support the chancellor's decision.
¶ 23. It is well settled in child custody modification cases[3], that the polestar consideration is the best interest of the child. Riley v. Doerner, 677 So.2d 740, 744 (Miss. 1996) (citing Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994)). The majority opinion correctly cites Pace stating that to modify child custody there must be (1) a material change in circumstances that adversely affects the child and (2) the change of custody is in the best interest of the child. Pace v. Owens, 511 So.2d 489, 490 (Miss.1987). The majority concludes that no modification is appropriate absent a finding of a material change in circumstances that adversely affected Rodney Jr.'s well-being. However, this Court concluded in Riley that although the chancellor had failed to find a material change in circumstances having an adverse affect on the child, modification was nonetheless justified because it was in the child's best interest. Riley, 677 So.2d at 743. The supreme court quoted the following language from the court of appeals' decision:
We must stress that we are not in any way retreating from the long standing rule stated above regarding custody, but merely emphasize that the best interest of the child is the chief concern of this Court. In all child custody cases, the polestar consideration is the best interest of the child.
Id. (quoting Riley v. Doerner, No. 95-CT-00007-COA, slip op. at 4 (Miss.Ct.App. Dec.29, 1995)).
¶ 24. The supreme court stated that while the general rule was that a positive change in the non-custodial parent's life did not alone justify custody modification, "when the environment provided by the custodial parent is found to be adverse to the child's best interest, and that the circumstances of the non-custodial parent have changed such that he or she is able to provide an environment more suitable than *40 that of the custodial parent, the chancellor may modify custody accordingly." Id.
¶ 25. In explaining that it was in no way dispensing with or disregarding the straightforward application of the standard test for custody modificationa material change adversely affecting the childthe supreme court emphasized that "a chancellor is never obliged to ignore a child's best interest in weighing a custody change; in fact, a chancellor is bound to consider the child's interest above all else." Id. at 744-45. The supreme court continued, stating:
The test we have devised for custody modification need not be applied so rigidly, nor in such a formalistic manner so as to preclude the chancellor from rendering a decision appropriate to the facts of an individual case. In particular, it should not thwart the chancellor from transferring custody of a child from one parent to another when, in the chancellor's judgment, the child's welfare would be best served by such transfer.
Id. at 745. The supreme court reiterated that the totality of the circumstances must be considered when determining the best interests of the child. Id. at 743 (citations omitted). In this case, it is evident that the chancellor considered the child's best interest above all else. After carefully weighing the Albright factors, the chancellor concluded that Rodney is the best parent to have the care and custody of Rodney Jr. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). After considering the totality of the circumstances, the chancellor found that the child's best interest would be served by being in the physical custody of his father.
¶ 26. The majority opinion also found that the chancellor's decision was not based on substantial and credible evidence in the record. However, the record reflects that the chancellor made detailed findings of fact and conclusions of law and found that the best interest of the child would be served by transferring custody to the father. The chancellor stated:
It is always the duty of the court to observe the witnesses, hear the testimony of the witnesses and to determine their individual credibility. In this case, the court found the testimony of Rodney, Aimee, and Rodney's mother, Joyce Taylor, to be unquestionably credible.... The testimony of Karen with whom the court intentionally and very closely observed, was not credible. Her goal, it was clear to the court, was to "win" this contest with Rodney, even if that "win" damaged her son. That, in this court's mind, is unforgivable.
The chancellor is the one who actually hears the testimony of witnesses and observes their demeanor. He is in a unique position to judge the credibility of the witnesses. We will not undermine the chancellor's authority by replacing his judgment with our own. Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993). In Belding v. Belding, 736 So.2d 425 (Miss.Ct. App.1999), we stated that, "[t]his Court does not reevaluate the evidence, retest the credibility of witnesses, nor otherwise act as a second fact finder. If there is substantial evidence in the record to support fact-findings, no matter what contrary evidence there may also be, we will uphold the chancellor." Smith v. Jones, 654 So.2d 480, 485 (Miss.1995). In this case, the chancellor heard testimony, made detailed findings of fact and conclusions of law, and determined that the best interest of the child would be served by being in the physical custody of his father, Rodney Taylor. Although contrary evidence was presented during this trial, the record shows sufficient evidence, including the testimony of Rodney, Aimee, and Joyce Taylor, to support the chancellor's finding that the best interest of the child would be served by modifying custody in favor of Rodney. This Court does not retest the credibility of witnesses, and in this case, after having the benefit of observing the witnesses while they testified, the chancellor clearly stated that he did not find Karen's testimony credible. It is the duty *41 of this Court to find error when the chancellor does not make findings of fact or his findings of fact are not supported by the evidence. The majority seems to rely on the fact that the evidence did not support the chancellor's conclusions in his findings of fact. That is not true in this case. The record reflects the testimony of more than one witness that supports a finding that the best interest of the child would be served by placing him in the custody of his father. It is not the function of this Court to second guess the findings of the chancellor or how he arrived at his results, as long as there is sufficient evidence to support his findings. In this case, the evidence supports the chancellor's findings, and his "polestar consideration" was the child's best interest. Accordingly, the chancellor's decision should be upheld.
¶ 27. For the foregoing reasons, this case should be affirmed on all issues except Issue V, in which the chancellor restricted Karen's visitation by ordering that Rodney, Jr. was never to be alone with Karen's husband Ken. Although the chancellor has broad discretion in determining visitation and restrictions on visitation, the Mississippi Supreme Court has stated:
evidence must be presented that a particular restriction on visitation is necessary to avoid harm to the child before a chancellor may properly impose the restriction. Otherwise, the chancellor's imposition of a restriction on a noncustodial parent's visitation is manifest error and an abuse of discretion.
Rushing v. Rushing, 724 So.2d 911, 916 (Miss.1998) citing Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992). In this case, there is not sufficient evidence of harm to Rodney, Jr. that would necessitate the imposition of this type of restriction. Accordingly, the chancellor abused his discretion, and this issue should be reversed.
THOMAS, J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Mr. Lee was dismissed by the chancellor on stipulation of the parties on the morning of the hearing without giving a recommendation as to where Rodney, Jr. should be placed. However, Mr. Lee wrote a letter to the chancellor at the time Karen filed her motion of reconsideration. In that letter, Lee recommended that Rodney, Jr. be returned to Karen's custody.
[2] The letter from Wayne O. Lee to the chancellor indicates that Rodney, Jr. recanted his stories of sexual abuse by Rodney and Aimee in interviews with him but expressed a desire to remain with Karen.
[3] It should be noted that during these modification proceedings, the parties made references to a "counter-petition" and "a motion for re-consideration." The initiation of these actions should be made using the correct labels as outlined in the Mississippi Rules of Civil Procedure. See M.R.C.P. 60, 81(d), 81(f) and Comments to 81(f).