# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-CA-01836-COA

**THOMAS LEE ROBISON**                                                          **APPELLANT**

**v.**

**CAROL DENISE ROBISON LANFORD**                                    **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 07/28/1999 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JEFFERSON DAVIS GILDER |
| ATTORNEY FOR APPELLEE: | KINNEY M. SWAIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | MODIFICATION ORDER ENTERED GRANTING CUSTODY TO MOTHER |
| DISPOSITION: | AFFIRMED - 12/04/2001 |
| MOTION FOR REHEARING FILED: | 12/13/2001; REVERSED AND REMANDED - 03/19/2002; 3/29/2002; denied 5/14/2002 |
| CERTIORARI FILED: | 5/24/2002; granted 9/26/2002 |
| MANDATE ISSUED: | |

ON MOTION FOR REHEARING

EN BANC:

SOUTHWICK, P.J., FOR THE COURT:

¶1. Carol Lanford was awarded custody of her minor child as a result of proceedings that she brought to modify an earlier custody award. The father, Thomas Lee Robison, appealed. On June 26, 2001, we found reversible error because of the absence of findings on whether there had been a material change in circumstances, and insufficient evidence in the record to justify any change in custody. Before deciding whether to enter judgment for the appellant, we remanded for the chancellor to explain the manner in which the child's private conversation with her in chambers had been taken into account, as we had nothing to explain what was said or its weight. If it had been significant in the decision-making, then some record of that evidence had to be provided to us. On remand, the chancellor agreed that her conversation with the

child in chambers was a significant factor in the decision to change custody, but the chancellor refused to provide any transcript or take other alternative steps to provide the evidence from the child. Because of the phrasing of the chancellor's order, we initially understood that Mr. Robison on remand had agreed that no further conversation by the chancellor with the parties' daughter should be held. Therefore we found the issue waived by the party who was alleging error.

¶2. On motion for rehearing, though, Mr. Robison has provided proof that he did not agree to the chancellor's refusal to conduct a hearing. Instead, by letter he informed the chancellor that he objected to another in-chambers conference unless it was on the record. Mr. Robison has moved that the record be supplemented with that letter, a motion that we grant. Thus he objected only to the chancellor's conducting of an in-chambers discussion unless it complied with our directive, namely, that in some manner a record of the conversation be made. Mr. Robison's motion for rehearing is granted, the former opinion is withdrawn, and we now reverse and remand.

## FACTS

¶3. Thomas Lee Robison and Carol Denise Robison, now Lanford, were married in 1990. They had one child, Britney, born in 1991. In December 1992, Mr. Robison filed for divorce. It was granted on the grounds of irreconcilable differences by a decree dated March 25, 1993.

¶4. The divorce decree incorporated the parties' agreement to joint legal custody of the child. The agreement also provided that Mr. Robison was to have primary physical custody of the child during nine months of the year from September through May and that Mrs. Lanford was to have primary physical custody in June through August. Each party was awarded reasonable visitation rights during the period of the other's custody. Mr. Robison was to pay $150 per month child support for the three months in which Mrs. Lanford had physical custody of the child.

¶5. Mr. Robison filed a motion to modify custody on December 9, 1997. He sought sole custody of the child as well as child support from Mrs. Lanford. Mrs. Lanford answered the claim and filed a cross-motion seeking sole custody as well as child support from Mr. Robison. The dispute was settled by consent modification decree dated December 30, 1998. The decree left custody unchanged but clarified visitation.

¶6. In late March 1999, Mrs. Lanford noticed bruising on the child's buttocks. The child informed her that the bruising was a result of a spanking by her father. Mrs. Lanford took the child to a hospital emergency room where she was treated by Dr. Wheelis. The doctor noted that there were two circular bruises about six centimeters in diameter on the child's backside and diagnosed physical abuse. Mr. Robison stated that the child was spanked with a paddle because she had lied and also stolen something, and that excessive force was not used. The matter was referred to a social services agency for an investigation into possible child abuse. Although the report is not in the appellate record, the testimony showed that the investigation found the evidence to be inconclusive. No further action was taken.

¶7. Approximately one month later, Mrs. Lanford filed a new petition to modify the former decree and to give her sole legal and physical custody of the child. While that was pending, the chancellor granted the parties' joint motion for the Department of Human Services to conduct a detailed study of the living environment of both parents. The study concluded that either home would provide a stable environment for the child.

¶8. A hearing was held on July 28, 1999. The court reviewed the results of the home studies, listened to testimony of the parties, and held an in-chambers conference alone with the minor child. The court found that it would be in the best interest of the child for Mrs. Lanford to have physical custody with visitation privileges for Mr. Robison. Mr. Robison appealed.

¶9. In our initial consideration of the appeal, we remanded for additional development of the record. The chancellor responded to that remand order. We now decide the appeal.

## DISCUSSION

### 1. Evidence to support change in circumstances

¶10. The evidence in the record is sparse to support that there was a material change in circumstances adverse to the interest of the child, or that the mother's receiving custody was in the child's best interest. *Pace v. Owens*, 511 So. 2d 489, 490 (Miss. 1987). The chancellor stated in her 1999 order that "it would be in Britney's best interest that her custody be awarded to her mother, Ms. Lanford, at this time." The chancellor did not discuss any material change in circumstances in the decree. She said that it was her "duty to weigh all of the evidence, and take it into consideration and to make a decision about where this child shall live at this point in her life." She found "that it would be in Britney's best interest that her custody be awarded to her mother, Ms. Lanford, at this time."

¶11. Proceedings that address a request for modification of custody should follow these steps: (1) the initial burden is on the party seeking the change to demonstrate that there has been a material change in the circumstances affecting the child; (2) if that is shown, it must also be shown that the change is detrimental to the child's welfare; and (3) finally, the chancellor must find that the change in custody is in the child's best interest. *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997).

¶12. On remand, the chancellor explained the implicit findings that she had earlier made, and gave them explicitly. The chancellor had relied in significant measure on the fact that Britney had once been bruised by her father during a spanking. That spanking, administered for lying about the taking of some candy, was found to be excessive. That "made it apparent that a parent does not know how and where to administer appropriate discipline. . . . Testimony of the father's drinking, temper, and inappropriate discipline were red flags to the court that the child's custody should be changed."

¶13. The chancellor then stated that because of these initial items of evidence, the parties gave permission for her to talk with Britney in chambers. It is there that a private conversation was held that the chancellor acknowledges, but will state no more, was "relevant" in her decision.

¶14. Chancellors are entrusted with substantial discretion, and using it they exercise excruciatingly important power to affect the lives of families. The discretion is subject to appellate review, however, if either party takes the proper steps to appeal. As the chancellor performs a vital role in the process, so does the appellate court. Perhaps each level at times gives too little credit to the role of the other, but the constitution and statutes create each court and guide its functioning. As part of that function, an appellate court is to affirm findings of fact by chancellors in domestic cases when they are "supported by substantial evidence unless the chancellor abused [her] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Holloman v. Holloman*, 691 So. 2d 897, 898 (Miss. 1996). The evidence for this review must be presented to the appeals court if this function is to have any meaning.

¶15. If the sufficiency of the evidence is attacked, it simply is not possible to review what is in the record, and if there is an insufficiency, accept unquestioningly that secret evidence provides the necessary additional quantum. Doing that is an abdication by this Court of its responsibilities. The trial court cannot be the initial fact-finder and then block the review of those facts. A sister state's intermediate appeal's court recently faced the exact issue:

> If a trial court relies significantly on information obtained through the in camera interview to resolve factual conflicts relative to any of the other best interests factors and fails to place that information on the record, then the trial court effectively deprives this Court of a complete factual record on which to impose the requisite evidentiary standard necessary to ensure that the trial court made a sound determination regarding custody. . . . These critical decisions must be subject to meaningful appellate review.

*Foskett v. Foskett*, 634 N.W. 2d 363, 367 (Mich. Ct. App. 2001). We agree.

¶16. We understand that the chancellor believes that keeping this significant evidence secret is necessary to maintain her responsibilities. There are readily recognized procedures, though, for sensitive, classified, or otherwise non-public information to be obtained by a trial court and provided to an appellate court. What seems appropriate here is that with permission of the parties, a transcript of the testimony could have been provided this Court under seal. M.R.A.P. 48A.

¶17. Taking what is provided to us, we now examine the findings that were made on remand and determine whether there is evidence to support them. The incidents that support the chancellor's finding of a material change in circumstance were said to be "the father's drinking, temper, and inappropriate discipline . . . ."

¶18. The "inappropriate discipline" is a reference to the previously mentioned bruises that Mrs. Lanford discovered that arose from a spanking by the girl's father. A doctor concluded after an examination that the paddling had been excessive. His examination revealed two bruises, about 2.33 inches in diameter, on the child's buttocks. The mother and a witness whom she called testified the bruising was much more extensive.

¶19. The issue of the father's drinking arose from testimony by Mrs. Lanford's witnesses. He was said at times to have been seen drinking while in his yard at 11:00 P.M. or midnight. The daughter, Britney, stated that her father would allow his step-children to drink at home, since he thought that was better than their drinking elsewhere in secret. The oldest child was only eleven. Mrs. Lanford testified that her former husband would drink excessively in the child's presence.

¶20. The finding that the father's temper was a reason to change custody may be based on evidence from Mrs. Lanford that he had once choked her and then pushed her down on a sofa.

¶21. The credibility of the witnesses on these matters was to be determined by the chancellor. The chancellor must have filtered this testimony through the knowledge that each parent had incentives to exaggerate or put the other person in the worst possible light. The chancellor was entitled to conclude that this evidence was believable. It showed excessive drinking by the father at home, but no indications of danger to himself or this child. It showed that he was overly indulgent with his stepchildren about their drinking at home. He may have once committed a physical assault on his former wife, but there was no evidence of injuries. He also may once have used excessive force in paddling Britney. The chancellor said that she found these to be "red flags," which we take to mean that they were representative of even worse

actions that might occur in the future.

¶22. We must decide whether this proof revealed a material change in circumstances adverse to the interests of the child. An allegation of child abuse is a very serious matter. As all allegations in litigation, however, it is for the trial court to analyze whether evidence exists sufficient to support it. Bruising on a child resulting from a spanking is to be considered. However, "an isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change in custody." *Tucker v. Tucker*, 453 So. 2d 1294, 1297 (Miss. 1984). The chancellor did have more to base her decision upon, which was the drinking and an incident of possible assault on Mrs. Lanford. Even with those, however, there is little to show that a change in circumstances had occurred since the time of the initial custody decision so as to make joint custody adverse to the child.

¶23. We thus arrive again to the point we were in our June decision, wondering if the evidentiary deficit might be satisfied by what was said during the private, untranscribed conversation with Britney. Since the chancellor both acknowledged that what the girl said was significant in her final decision but refused to enlighten us on what that was, we find that the record presented to us does not support the conclusion reached.

¶24. We reverse the judgment that modified custody. What to do next now becomes the issue. Obviously the chancellor found that the best interest of the child required a change in custody. Taking an unduly independent approach to protecting that best interest, the chancellor has not allowed a record to be made of the basis for the decision. We do not want this tug and pull between the two courts to distract either court from the issues of the child's welfare. Therefore, taking into account the long passage of time since the initial modification decision, and factoring in our reluctance to make a final decision here on appeal that would be so centrally affected by this institutional disagreement, we remand for further proceedings. As of the issuance of the mandate from the Court, however, the modification is reversed and custody reverts to being joint.

¶25. We discuss two other issues because they may recur on remand.

### 2. Admissibility of certain evidence

¶26. Mr. Robison argues that the chancellor erroneously admitted certain evidence and testimony. First, the chancellor considered evidence regarding events which occurred prior to the December 30, 1998 consent decree. Mr. Robison is correct that the consent judgment is *res judicata* as to any issues that might have been litigated and determined at the time of the December 30, 1998 judgment. *Childers v. Childers*, 717 So. 2d 1279, 1280 (Miss. 1998). However, Mr. Robison waived the issue by failing to object to the introduction of such evidence. When parties oppose the introduction of evidence, they must make a timely objection or motion to strike. M.R.E 103(a) (1).

¶27. Even if an objection had been made, an issue would have arisen of whether the conduct being discussed was known or reasonably should have been known at the time of the earlier decree. Further, to the extent the conduct appeared relatively minor at the time of the earlier decree, its continuation or worsening since were relevant in the chancellor's consideration.

¶28. Second, Mr. Robison argues that it was error for the chancellor to hold the in-chambers conference alone with the child that we have already discussed at some length. In the chancellor's July 28, 1999 bench

ruling, she states "that I have visited with the child in question, Britney, in chambers by agreement of both parties." Neither party objected to this private meeting. Therefore the conducting of the interview is not a separate issue preserved for our review. The question of the absence of a record of that interview has very much been before us, however. We do not address here the in-chambers discussions that with some frequency occur to determine a child's preference between the parents for custody. That is a matter of seeking an answer to a simple though heart-rending question. Our concern in this appeal is the potentially much more elaborate gathering of facts that decides the outcome of the case but that cannot be reviewed on appeal.

¶29. Error is also alleged in allowing Mrs. Lanford's mother, emergency room nurse Shirley Mordecai, to give opinion testimony without the proper predicate. Mrs. Mordecai was asked her opinion of the significance of the bruises that she saw on the child. Mr. Robison's counsel objected and Mrs. Lanford's counsel responded by offering to tender the witness as an expert for voir dire. Mr. Robison's counsel did not respond to the offer. Mrs. Mordecai was then allowed to give her opinion as to the severity of the bruises and whether or not they were indicative of child abuse.

¶30. At least two issues arise from the procedure that was followed. One is whether this was expert testimony. Another is whether counsel's failure to conduct voir dire when given an opportunity hinders the consideration of the issue on appeal. We decline to answer the first question because of our decision on the second. Since counsel did not attempt to show that this testimony would have been beyond the competence and experience of the witness to give, we find that Mr. Robison has waived the issue.

### 3. Statutory requirement of affidavit

¶31. Mr. Robison also argues that the chancellor should have dismissed the petition for modification because it did not contain statutorily required disclosures. Such petitions should state whether there have been other custody proceedings and whether someone else not a party has physical custody of the child. Miss. Code Ann. § 93-23-17 (Rev. 1994).

¶32. No objection below was made on this basis. The statute does not describe the effect of the failure to comply with this provision. No precedents have been cited to us that suggest that the failure to satisfy the provision is jurisdictional and cannot be waived. We find that the absence of these disclosures was waived by the failure to point them out to the trial court, at least in the absence of any indication that there were actually other proceedings that the chancellor needed to consider.

## CONCLUSION

¶33. On remand the chancellor may conduct additional proceedings regarding whether custody should be modified from that which was in existence before the modification that we are now reversing. A record of all evidence acquired must be made. Any conversations with the child or any other witness must be transcribed even if in-chambers proceedings are held, and both parties must be able to review the transcript in order to respond with evidence or argument. In preparing such a record, if there is another appeal, the chancellor may use such procedures to protect the information from public disclosure as are permitted by rule and which in her discretion are appropriate.

¶34. **THE JUDGMENT OF THE CHANCERY COURT OF SUNFLOWER COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR ADDITIONAL PROCEEDINGS**

**REGARDING CUSTODY. COSTS OF THIS APPEAL ARE TAXED EQUALLY TO THE PARTIES.**

**McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.**